IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12–cv–01778–WYD–KMT

MICHAEL C. FIELD,

      Plaintiff,

v.

THOMAS BENEZE,

      Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on Defendant's Motion to Dismiss.  (Doc. No. 24, filed Oct. 29, 2012.)  For the following reasons, the court recommends that Defendant's Motion to Dismiss be GRANTED.

### FACTUAL BACKGROUND

      The following facts are taken from Plaintiff's "Prisoner Complaint" (Doc. No. 1, filed July 9, 2012 [Compl.]) and the parties' submissions with respect to this Recommendation. Plaintiff is an inmate in the Colorado Department of Corrections (CDOC), formerly incarcerated at the Colorado Territorial Correctional Facility (CTCF) and currently incarcerated at the Buena Vista Correctional Complex (BVCC).  Plaintiff alleges that Defendant Beneze violated his constitutional rights under the First, Eighth, and Fourteenth Amendments by placing him in segregation, transferring him to BVCC, and confiscating his property.

On February 9, 2012, Plaintiff was removed from the general inmate population,[1] pursuant to CDOC Administrative Regulation (AR) 150-01(IV)(E)(3), pending an investigation of his involvement in a scheme to defraud.  (Compl. at 2.)  AR 150-01(IV)(E)(3) provides: "An offender who poses an imminent and substantial threat to the security of the institution, other offenders, DOC employees, contract workers, or volunteers, or to himself, may be removed from population prior to hearing."  (Mot. Dismiss, Ex. A at 15-16.)  On February 22, 2012, Plaintiff was served with a "Notice of Charges" alleging that he had committed fraud in violation of the CDOC Code of Penal Discipline.  (Compl. at 2.)  Section 3 of the Notice of Charges stated that "Field was removed from population," which Plaintiff maintains indicates that Plaintiff was removed from population due only to the charges of fraud against him, and not because he posed a imminent and substantial threat to the facility under AR 150-01(IV)(E)(3) or because he violated the Code of Penal Discipline in any other manner.  (*Id.*)

On February 29, 2012, Plaintiff was found guilty of fraud and given a total of 16 days in segregation, or time served.  (*Id.* at 2-3.) Plaintiff was told by the hearing officers, Lieutenants Robert Frazzino and Ken Topliss, that he would be released from segregation that day.  (*Id.*) Nevertheless, Defendant Beneze ordered that Plaintiff be kept in segregation pending a "Classification Review."  (*Id.* at 3.)  Ultimately, Plaintiff was kept in segregation from February

---

[1] The parties differ as to the nature of Plaintiff's placement.  Plaintiff claims he was placed in punitive segregation, whereas Defendant maintains that he was merely removed from population.  (*See* Mot. Dismiss at 4 n.1.)  Although this distinction may be relevant for purposes of CDOC regulations, it is not relevant to the court's resolution of Plaintiff's constitutional claims. *See* discussion of *Wilkinson* & *DiMarco, supra* at 14.

9, 2012 until April 10, 2012, for a total of 63 days.  (*Id.*)  Plaintiff alleges that the duration of his stay violated AR 150-01(IV)(E)(4), which provides "[t]he maximum period of confinement in punitive segregation should not exceed 60 consecutive days."  (*Id.*)

At some time shortly after Plaintiff's disciplinary hearing, Defendant Beneze requested and received a Classification Review to determine whether it was appropriate for Plaintiff to continued to be housed at CTCF.  (*Id.* at 4.)  Plaintiff's "Inmate Reclassification Rating Document," provided that Plaintiff was being reviewed for reassignment as a "Discretionary Reclass: Reqest [sic] Regressive Move Due to Security Concerns."  (*Id.*)   Classification Chairman Charles Sanchez added a further notation to the Reclassification Document:  "Please Review for Movement to a More Secure Facility."  (*Id.*)

AR 600-01(IV)(L)(3) provides

If continued housing of an offender at their presently assigned facility would pose significant risk of injury to the offender, another offender(s), or constitute an extreme risk or threat to the security of the facility or risk to the general public, the offender shall be reviewed for temporary assignment to a more secure facility on an emergency basis.

Plaintiff appears to allege that AR 600-01(IV)(L)(3) required that he be provided with a hearing before being assigned to a more secure facility, and that he never received such a hearing.  (*See id.*)  Plaintiff further alleges that he has never been charged with, or made aware of pending charges for, CDOC Code of Penal Discipline or state statutory violations that would warrant his reassignment to a more secure facility.  (*Id.*)

Nevertheless, on April 10, 2012, Plaintiff was moved from CTCF to BVCC.  (*Id.*) Plaintiff maintains that he has been "targeted" by Defendant Beneze, and that Defendant

Beneze's actions have prejudiced his "progressive movements" within the CDOC, including parole and community placement.  (*Id.*)

Plaintiff also challenges the confiscation of his "personal, legal, and religious property" while at CTCF.  (*Id.* at 5.)  More specifically, on February 9, 2012, when Plaintiff was removed from population, Plaintiff's property was packed and inventoried by CTCF staff.  (*Id.*)  However, in an alleged violation of CDOC policy, Plaintiff was never provided with a copy of the inventory of his property.  (*Id.*)  On February 10, 2012, Plaintiff contacted Lieutenant Shoemaker, "the supervisor of Cellhouse 1," to inquire about his property.  (*Id.*)  Lieutenant Shoemaker told Plaintiff that his property was in Defendant Beneze's possession.

On April 6, 2012, Plaintiff contacted Case Manager Willis, the segregation case manager, to inquire why he had not received any paperwork pertaining to his property.  (*Id.*)  Plaintiff claims he had previously sent several requests to Defendant Beneze, but had not received any response.  (*Id.*) Case Manager Willis informed Plaintiff that she had contacted Defendant Beneze and was informed that Plaintiff's property had been confiscated by the Securities and Exchange Commission, and thus was no longer located at CTCF.  (*Id.*)

On April 12, 2012, Plaintiff's family friend, Donna Wagner, contacted Defendant Beneze to inquire about the location of some of Plaintiff's property that actually belonged to an outside company, for which Ms. Wagner acted as a registered agent.  (*Id.*)  Defendant Beneze informed Ms. Wagner that the property was confiscated by the SEC.  (*Id.*)  When Ms. Wagner asked about property receipts or other information documenting the property's whereabouts, Defendant Beneze allegedly informed Ms. Wagner that there was not any such documentation.  (*Id.*)

4

Plaintiff maintains that the property confiscated by Defendant Beneze included legal paperwork pertaining to his criminal case, which Plaintiff is currently challenging in post-conviction proceedings under Colorado Rule of Criminal Procedure 35.  (*See id.*)  Plaintiff maintains that without access to the relevant motions filed in his criminal case, he "can not effectively litigate his post coviction [sic] proceedings."  (*Id.*) Further, Plaintiff alleges that because the property confiscated by Defendant includes his religious materials, his right to practice his religion was hindered.  (*Id.*)[2]

## PROCEDURAL HISTORY

Plaintiff's Complaint asserts three claims for relief, although each incorporates several different alleged constitutional violations.  Plaintiff's first claim alleges that Defendant Beneze's placement of Plaintiff in segregation for 63 days without a hearing violated Plaintiff's due process rights under the Fourteenth Amendment, as well as the Eighth Amendment's prohibition on cruel and unusual punishment.  Plaintiff's second claim alleges that by assigning him to BVCC, allegedly a higher security facility than CTCF, without a hearing, Defendant violated Plaintiff's Fourteenth Amendment due process and Eighth Amendment rights.  Plaintiff's third claim alleges that Defendant's confiscation of his personal property, including legal and

---

[2] Allegedly, the confiscated property also includes a copy of his military records. (Compl. at 5.)  Plaintiff maintains that because these records include identifying information, which could subject Plaintiff to identity theft.  Plaintiff also maintains that these records are property of the United States Government and therefore should not be in the possession of anyone but Plaintiff.  The court does not interprets Plaintiff's Complaint to assert that these allegations give rise to a claim separate from those already asserted in his third claim.

religious materials, violated his First Amendment rights to free exercise of religion and access to

the courts, as well as his Fourteenth Amendment due process rights.

Defendant Beneze's Motion to Dismiss was filed on October 29, 2012. (*See* Mot.) After

receiving an extension of time to file a response (*see* Minute Order, Doc. No. 29, filed Nov. 8,

2013), Plaintiff filed his Response on December 5, 2012. (Doc. No. 30.) Under

D.C.COLO.LCivR 7.1A and Fed. R. Civ. P. 6(d), Defendant Beneze had until December 22,

2013 to file a reply. Defendant did not file a reply on or before that date. Accordingly, this

matter is ripe for review and recommendation.

## LEGAL STANDARDS

### A. Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted). A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct.

897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir.

1997) (a court may not "supply additional factual allegations to round out a plaintiff's

complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may

not "construct arguments or theories for the plaintiff in the absence of any discussion of those

issues").

### B.      Lack of Subject Matter Jurisdiction

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for lack of subject

matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment

on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks

authority to adjudicate the matter, attacking the existence of jurisdiction rather than the

allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)

(recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction

when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is

on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th

Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings

in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The

dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir.

2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that

dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice

is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the

complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v.*

7

*Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however,

the Court may consider matters outside the pleadings without transforming the motion into one

for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Where a

party challenges the facts upon which subject matter jurisdiction depends, a district court may

not presume the truthfulness of the complaint's "factual allegations ... [and] has wide discretion

to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to

resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.*

**C.**     ***Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that

the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d

1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual

allegations are true and construes them in the light most favorable to the plaintiff."  *Bellmon*, 935

F.2d at 1198.  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts

which allow "the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 678-80.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citation omitted).

# ANALYSIS

## A.    *Official Capacity Claims*

Defendant argue that, to the extent that Plaintiff's Complaint can be read to assert claims against Defendant Beneze in his official capacity, those claims are barred under the Eleventh Amendment.  (Mot. Dismiss at 3.)  The court agrees.

As a threshold matter, it is unclear from the face of Plaintiff's Complaint whether he has sued Defendant Beneze in his official capacity, individual capacity, or both.  However, Plaintiff's Response tends to suggest that he intended to name Mr. Beneze as a defendant in his official capacity.  In light this ambiguity, the court proceeds on the assumption that Plaintiff intended to bring suit against Defendant Beneze in both capacities.

A motion to dismiss based on Eleventh Amendment immunity is treated as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  *Meyers v. Colo. Dep't of Human Servs.*, 62 F. Appx. 831, 832 (10th Cir. 2003).  The Eleventh Amendment to the United States Constitution states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  It has been interpreted to bar a suit by a citizen against the citizen's own state in federal court.  *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).  Suits against state officials in their official capacity should be treated as suits against the state.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  This is because a suit against a state official in his or her official capacity is a suit against the official's office and therefore is no different from a suit against the state itself.  *Will*

10

*v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment thus shields state officials, acting in their official capacities, from claims for monetary relief.  *See Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir.2007).

Moreover, a § 1983 action may only be brought against a person.  *See* 42 U.S.C. § 1983. Neither states nor state officers sued in their official capacity for monetary damages are persons within the meaning of § 1983.  *Will*, 491 U.S. at 70–71.[3]

By apparently naming Defendant Beneze in his official capacity, Plaintiff is attempting to impose liability on his employer, the CDOC.  *See Hafer,* 502 U.S. at 25.  The CDOC is considered an agency of the State of Colorado.  *See* Colo. Rev. Stat. § 24-1-128.5.  As such, Plaintiff claims are barred by the Eleventh Amendment to the extent that they seek to recover money damages from Defendant Beneze in his official capacity.

Plaintiff also seeks declaratory and injunctive relief.  (Compl. at 6.)  The Eleventh Amendment does not always bar actions in federal court seeking injunctive relief against state officials in their official capacity.  *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 n.10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.") (internal quotation marks and citation omitted); *Ex parte*

---

[3] In his Response, Plaintiff argues that Congress has abrogated state sovereign immunity in the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq*.  However, Plaintiff has not asserted any claims under RLUIPA.  In any event, the Supreme Court has concluded that Congress did not waive sovereign immunity for purposes of private claims for money damages under RLUIPA.  *See Sossamon v. Texas,* 131 S. Ct. 1651, 1663 (2011).

*Young*, 209 U.S. 123, 159-60 (1908) (holding that the Eleventh Amendment generally does not bar official-capacity claims seeking prospective injunctive relief from a state official). Nevertheless, to the extent that Plaintiff seeks retrospective declaratory relief—by way of a "declaration that the acts and omissions described herein violate[] Plaintiff's rights under the United States Constitution—such claims are barred by the Eleventh Amendment. *Meiners v. University of Kan.,* 359 F.3d 1222, 1232 (10th Cir. 2004).

Relatedly, although "the Eleventh Amendment does not prohibit a suit in federal court to enjoin prospectively a state official from violating federal law," *id.*, the court finds that Plaintiff's request for injunctive relief is moot due to his transfer to BVCC.  "When a prisoner files suit against prison officials who work in the institution in which he is incarcerated, seeking . . . injunctive relief on the basis of alleged wrongful conduct by those officials, and then that prisoner is subsequently transferred to another prison or released from the prison system," courts routinely dismiss such penitentiary-specific claims as moot. *Jordan v. Sosa,* 654 F.3d 1012, 1298 (10th Cir. 2011).  Because a prisoner's transfer "signal[s] the end of the alleged deprivation of his constitutional rights, an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect of the defendants' behavior toward him."  *Id.* (internal quotations and citations omitted).

Here, Plaintiff requests "a preliminary and permanent injunction order Defendant[] not to retaliate against Plaintiff in any form."[4]  (Compl. at 6.)  However, by Plaintiff's own admission,

---

[4] The court notes that Plaintiff's request for injunctive relief is not in keeping with his claims.  More specifically, Plaintiff seeks an injunction enjoining Defendant Beneze from

Defendant Beneze is employed as correctional officer at *CTCF* (*id.* at 1), and Plaintiff has since been transferred from that facility to BVCC.  Notably, Plaintiff's Complaint  does not challenge "policies that apply in a generally uniform fashion throughout a prison system," *Sosa,* 654 F.3d at 1028; nor has Plaintiff shown a reasonable expectation that he will be subjected to retaliation at the hands of Defendant in the future.[5]  *McAlpine v. Thompson,* 187 F.3d 1212 (10th Cir. 1999).  As such, under these circumstances, the court cannot provide Plaintiff with any effective relief, and an injunction would amount to no more than a declaration that Plaintiff was wronged.  Therefore, although not necessarily barred by the Eleventh Amendment, the court finds that Plaintiff's request for injunctive relief is moot.

---

retaliating against him, despite the fact that Plaintiff has not asserted a claim for retaliation. Although Defendant has construed Plaintiff's Complaint to assert a claim for retaliation (Mot. Dismiss at 13), and Plaintiff has asserted, without any factual support, that he was "targeted" by Defendant (Compl. at 4), the court does not construe Plaintiff's Complaint to assert a claim for retaliation.  *See Nasious v. Two Unknown B.I.C.E. Agents,* 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.").  Further, even if the court were to construe Plaintiff's Complaint to state a claim for retaliation, it would necessarily fail, as Plaintiff has not alleged that he engaged constitutionally protected activity.  *Shero v. City of Grove, Okla.,* 510 F.3d 1196, 1203 (10th Cir. 2007).

[5] Plaintiff maintains that he has a reasonable expectation of facing the same action again because the taking of his property on Defendant's order "renders [him] unable to prove ownership of property" and thus his "property could be confiscated as a result of not being able to prove ownership."  (Resp. at 17.)  Even assuming this might otherwise be sufficient to establish the capable-of-repetition doctrine, the court notes that Plaintiff's request for injunctive relief does not relate in any way to the confiscation of his property; rather, Plaintiff seeks only to enjoin Defendant from retaliating against him.  In addition, the court finds *supra* that Plaintiff fails to state a claim for relief based on the confiscation of his property.

**B.**     ***Fourteenth Amendment Due Process Claims (Claims One and Two)***

Defendants argue that Plaintiff's first and second claims fails to state a claim for violation of his due process rights under the Fourteenth Amendment because Plaintiff does not have a protected liberty interest in the conditions of his confinement.  (Mot. Dismiss at 3-11.) The court agrees.

**1.**     ***Claim One – Removal from Population***

Plaintiff's first claim, which alleges that his removal from population for 63 days violated his due process rights.  This claim is governed by the Supreme Court's opinion in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which found that due process liberty interests created by state regulations are generally limited to freedom from restraint that "imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life."  The *Sandin* Court expanded upon its analysis in *Wolff v. McDonnell*, 418 U.S. 539 (1974), to determine whether the due process clause afforded an inmate who received 30 days in punitive segregation following a disciplinary hearing a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*.  *Id.* at 483–84.

Following *Sandin*, the Supreme Court confirmed that an examination of prison rules or regulations themselves is no longer an appropriate method for ascertaining the existence of a liberty interest; rather, courts must look to the conditions of confinement to determine whether the inmate has suffered a "hardship" as set forth in *Sandin*.  *See Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005); *see also Estate of DiMarco v. Wyoming Dep't of Corrs.*, 473 F.3d 1334, 1339 (10th Cir. 2007) ("[s]tate policies or regulations will not create the basis for a liberty

14

interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). In fact, in Colorado, state laws and regulations themselves do not entitle inmates to remain in the general population absent certain conduct. *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).

Under *Sandin* and its progeny, then, a liberty interest arises only when the punishment imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life or when it will inevitably affect the duration of a sentence. *See Sandin*, 515 U.S. at 484, 487. Thus, the first question to address is whether an inmate's segregation gives rise to a right to due process under the Fourteenth Amendment. In this case, to prove that he suffered a due process violation, Plaintiff must demonstrate that the sanctioned restraint imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. The question of whether Plaintiff received adequate due process is only implicated after he establishes a protected liberty interest

An "atypical and significant hardship" sufficient to create a liberty interest is one that is of substantial degree (i.e., whether such conditions do more than mirror those in administrative segregation and protective custody) and duration. *See Gaines v. Stenseng*, 292 F.3d 1222, 1226 (10th Cir. 2002). For example, the Supreme Court determined that the government created a liberty interest subject to due process protections when officials placed an inmate indefinitely in a supermax prison where almost all human contact was prohibited and made the inmate ineligible for parole. *Wilkinson*, 545 U .S. at 224. In another case, the Tenth Circuit found an inmate's allegations that, for a three-year period, he was confined to his cell for all but five hours

15

each week and denied access to the telephone, showers, outdoor recreation, the law library and programs offered to general population, arguably implicated procedural due process concerns. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006).

However, in *Sandin*, the Supreme Court determined that the inmate's confinement in punitive segregation, which (with insignificant exceptions) mirrored the conditions imposed on inmates in administrative segregation, did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. *Sandin*, 515 U.S. at 486. As such, the inmate's punitive confinement of 30 days did not present the type of atypical, significant deprivation in which a state might create a liberty interest. *Id.* In *Gaines*, the Tenth Circuit noted that "[d]isciplinary segregation for some lesser period [than seventy-five days] could fail as a matter of law to satisfy the 'atypical and significant' requirement in a case in the future, thereby making it futile to allow the *pro se* plaintiff to amend his complaint." *Gaines*, 292 F.3d at 1296.

Here, according to Plaintiff's own allegations, the segregation imposed was only 63 days in total. Guided by the principles of by *Sandin*, *Gaines*, and *Wilkinson*, the court finds that Plaintiff's punitive segregation lasting only 63 days does not constitute a significant duration necessary to demonstrate an "atypical and significant hardship."

Regarding the degree of confinement, the Tenth Circuit has developed four factors that may be relevant in determining the appropriate baseline comparison and how significant the deviation from the baseline the conditions of confinement must be to create a liberty interest: (1) whether the segregation relates to and furthers a legitimate penological interest, such as safety or

16

rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of confinement as it did in *Wilkinson*; and (4) whether the placement is indeterminate. *Estate of DiMarco*, 473 F.3d at 1342. Any assessment of these factors must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts. *Id.* (citing *Sandin*, 515 U.S. at 482–484).

Regarding the first factor, Plaintiff admits that at least 16 days of his segregation was due to his disciplinary conviction for fraud, which is a legitimate penological interest to support segregation. In addition, the remaining 47 days of Plaintiff's segregation occurred while Plaintiff was undergoing a "Classification Review" to determine whether he should be transferred to another prison, which is also, at least facially, a legitimate penological interest.

With respect to the second factor, Plaintiff's Complaint does not present any facts regarding the "extremity" of conditions in segregation; thus, the court cannot conclude that Plaintiff's conditions of confinement exceed conditions typically imposed on inmates in administrative segregation and protective custody. *See Sandin*, 515 U.S. at 486. Similarly, the court does not find that Plaintiff's conclusory allegations that Defendant Beneze's actions "prejudiced [him] in regards to progressive movements, parole or community placement" (Compl at 4) demonstrate that his placement in segregation increased the duration of his sentence. *See also Grady v. Garcia,* No. 10-cv-00347-PAB-CBS, 2012 WL 1044491, at *9 (D. Colo. Mar. 27, 2012) (citing *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex,* 442 U.S. 1, 7 (1979)) (Colorado inmates do not have a protected interest in parole or community

17

placement).  Finally, with respect to the fourth factor, although Plaintiff's placement in segregation may have been indeterminate while he was under a Classification Review, the court is not persuaded that this tips the balance of the *DiMarco* factors, particularly where the ultimate duration of his segregation was less than 75 days total.  *See Gaines*, 292 F.3d at 1296.

Therefore, because all but one of the factors discussed above favor a conclusion that Plaintiff's segregation did not constitute an atypical and significant hardship, the court finds that Plaintiff's allegations fail to establish a constitutionally protected liberty interest.  Accordingly, the court finds that Plaintiff's allegations with respect to his removal from population fails to state a due process claim.

### 2.       *Claim Two – Transfer to BVCC*

Plaintiff's second claim alleges that his due process rights were violated when he was transferred from CTCF to BVCC without a hearing.  Generally, prison officials have discretion to transfer prisoners without a hearing "for whatever reason or for no reason at all."  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison as long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections so long as prison officials have discretion to transfer him for whatever reason or for no reason at all.").  However, in *Wilkinson*, the Supreme Court determined that a prisoner had a constitutionally protected liberty interest in being placed at Ohio's supermax facility.  545 U.S. 209.  The Court found that the cumulative effect of the conditions of confinement at the supermax facility were sufficient to constitute an "atypical and significant hardship."  *Id.* at 223-224.  The court noted that, at the supermax

18

facility, almost all human contact was prohibited, including conversations between cells, the lights were on for 24 hours, and exercise was allowed for only one hour a day in a small indoor room. *Id.* at 223-224. Although these conditions were similar to any solitary confinement facility, the Court found two additional factors persuasive: (1) placement was indefinite and reviewed only annually, and (2) placement at the supermax facility disqualified a prisoner from parole consideration. *Id.* at 224. The Tenth Circuit has interpreted *Wilkinson* to require courts to look at the same factors discussed *supra* to determine whether a liberty interest exists in avoiding transfer to another prison. *See DiMarco,* 473 F.3d at 1340-42.

Plaintiff's confinement at BVCC is not comparable to that described in *Wilkinson.* His transfer to BVCC was "due to security concerns"; thus, facially, the transfer was supported by a legitimate penological interest. More importantly, Plaintiff's Complaint does not include information regarding the conditions of his confinement at BVCC, much less conditions that could be considered extreme.[6] Further although Plaintiff alleges, in a conclusory fashion, that Defendant Beneze's actions have "prejudiced the Plaintiff in regards to progressive movements, parole or community placement" (Compl. at 4), as discussed *infra,* Plaintiff does not have a protected liberty interest in parole or community placement. *Grady,* 2012 WL 1044491, at *9

---

[6] In his Response, Plaintiff argues that BVCC has more restrictive movements than CTCF and other Level III facilities, is locked down more than any other Level II facility in the State of Colorado, that inmates receive only 45 minutes of recreation in the gym 2 times per week, and that inmates are not afforded outside recreation from October through April. (Resp. at 6.) The court cannot consider these arguments, however, as its review under Rule 12(b)(6) is limited to the four corners of Plaintiff's Complaint. *Oxendine v. Kaplan,* 241 F.3d 1272 (10th Cir. 2001). In any event, the court is not convinced that these conditions are remotely analogous to the supermax prison discussed in *Wilkinson* or could otherwise be classified as extreme.

(citing *Greenholtz,* 442 U.S. at 7).  Finally, although Plaintiff's transfer to BVCC is presumably

indefinite, the court finds that this fact does not tip the balance of the *DiMarco* factors in

Plaintiff's favor.  Altogether, Plaintiff's placement at BVCC falls well short of amounting to an

atypical and significant hardship that would give rise to due process protections.  Accordingly,

the court finds that Plaintiff's second claim fails to state claim for relief.

C.     ***Eighth Amendment Claims (Claims One and Two)***

Plaintiff's first and second claims also allege, respectively, that his confinement in

segregation and transfer to BVCC violated his Eighth Amendment right to be free from cruel and

unusual punishment.  The court agrees with Defendant that Plaintiff's Complaint falls short of

stating a claim for relief under the Eighth Amendment.

"To prevail on a 'conditions of confinement' claim under the Eighth Amendment, an

inmate must establish that (1) the condition complained of is 'sufficiently serious' to implicate

constitutional protection, and (2) prison officials acted with 'deliberate indifference to inmate

health or safety.'"  *Reynolds v. Powell*, 370 F.3d 1028, 1031-1032 (10th Cir. 2004) (quoting

*Farmer*, 511 U.S. at 834).  The question of the defendant's culpability is subjective, but whether

the condition complained of is sufficiently serious is evaluated on an objective basis.  *Barney v.*

*Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998).

The objective component of a "conditions of confinement" claim requires that the

objectionable conditions be sufficiently serious so as to "deprive inmates of the minimal

civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Thus,

prisons must provide humane conditions of confinement, including adequate food, clothing,

shelter, sanitation, medical care, and reasonable safety from bodily harm.  *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison conditions may be "'restrictive and even harsh'" without violating constitutional rights. *Barney*, 143 F.3d at 1311 (quoting *Rhodes*, 452 U.S. at 347); *see also Wilson v. Seiter,* 501 U.S. 294, 298 (1991) ("the Constitution . . . does not mandate comfortable prisons and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (internal citations and quotation marks omitted).

The court finds that Plaintiff's first and second claims fail on the objective prong of the Eighth Amendment inquiry.  Plaintiff's Complaint does not allege any facts as to the conditions of his confinement after he was removed from population at CTCF, much less facts suggesting that Plaintiff was deprived of the minimal civilized measure of life's necessities.  Similarly, Plaintiff's Complaint is devoid of any facts relating to the conditions of his confinement at BVCC.[7]  Accordingly, the court finds that Plaintiff's first and second claims fail to state a claim for violations of his rights under the Eighth Amendment.

---

[7] As discussed *infra* in footnote 6, Plaintiff maintains in his Response that BVCC inmates are locked down a minimum of 20 hours per day if they are not working, receive only 45 minutes of recreation time in the gym two times a week, and do not receive outside recreation time from October through April.  (Resp. at 7.)  In addition, Plaintiff also maintains that the cells are not in compliance with American Correctional Association square-footage standards for inmates locked down over 10 hours per day and that inmates are provided with only one roll of toilet paper per week.  (*Id.* at 7-8.)  Again, the court cannot consider these arguments because they are raised outside the Complaint.  *Oxendine,* 241 F.3d 1272.  In any event, the court would not find that they amount to a deprivation of the minimal civilized measure of life's necessities.

### D.      Claim Three

Defendant Beneze argues that Plaintiff's third claim fails to state a claim for violations of Plaintiff's (1) free exercise rights under the First Amendment, (2) right of access to the courts under the First Amendment,[8] or (3) due process rights under the Fourteenth Amendment.  The court agrees.

### 1.      Due Process

An inmate's ownership of property is a protected property interest that may not be infringed without due process; there is a difference, however, "between the right to own property and the right to possess property while in prison."  *Searcy v. Simmons,* 299 F.3d 1220, 1229 (10th Cir. 2002) (quoting *Hatten v. White,* 275 F.3d 1208, 1210 (10th Cir. 2002).  Here, it is unclear from the facts alleged whether Plaintiff was deprived of ownership, or merely possession, of his property.  Although Defendant Beneze allegedly ordered that Plaintiff's property be confiscated, Plaintiff was later told that his property was actually confiscated by the Securities and Exchange Commission, was no longer located at CTCF, and that there were no property receipts or other documentation stating where the property could be located.  (Compl. at 5.)  As alleged, Plaintiff's due process claim does not present a scenario where an inmate's property is confiscated only for the duration of his sentence or confinement in segregation.  In

---

[8] Plaintiff alleges that the confiscation of his legal materials violated his rights under the Fifth Amendment.  (Compl. at 5.) However, this claim is cognizable under the First Amendment. *Jackson v. Mullin,* No. CIV 11-013-RAW-SPS, 2012 WL 1035224, at *2 n.2 (E.D. Okla. Mar. 27, 2012).

addition, Plaintiff notably was not provided an opportunity to send his property to relatives or other individuals outside CTCF for safekeeping. *See, e.g., Hatten,* 275 F.3d at 1208.

Nevertheless, even assuming Plaintiff has been deprived of his ownership interest in his property, the court finds that Plaintiff's due process claim must fail. Neither negligent or intentional deprivations of property violate the due process clause so long as adequate state post-deprivations remedies are available. *Hudson v. Palmer,* 468 U.S. 517, 533 (1984). Colorado has provided such a remedy at Colo. Rev. Stat. § 24-10-106(1.5)(b). *Durre v. Dempsey,* 869 F.2d 543, 546 (10th Cir. 1989). Plaintiff has not alleged facts demonstrating that this remedy is somehow inadequate. *See id.* at 547. Accordingly, because Colo. Rev. Stat. § 24-10-106 provides Plaintiff with an adequate post-deprivation remedy, Plaintiff fails to state a claim for violations of his due process rights based on the confiscation of his property.

### 2.    *Free Exercise*

In order to state a claim that Defendant Beneze violated his right to free exercise of religion, Plaintiff must adequately allege that Defendant "substantially burdened [his] sincerely-held religious beliefs." *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) (citation and internal quotation marks omitted). "[T]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held." *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007) (quotation marks and citation omitted). Plaintiff must also allege facts demonstrating that the confiscation of his religious property substantially burdened his religious beliefs. *Strope v. Cummings,* 381 F. App'x 878, 881 (10th Cir. 2010) (citing *Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1312-15 (10th Cir. 2010)).

Not "'every infringement on religious exercise will constitute a substantial burden . . . : [A]t a minimum the substantial burden test requires . . . more than an inconvenience to one's religious practice.'" *Id.* (quoting *Abdulhaseeb,* 600 F.3d at 1316).

Plaintiff's only allegation relating to his free exercise claim is that the property confiscated by Defendant Beneze "also included the Plaintiff's religious materials, significantly hendering [sic] the Plaintiff's right to practice religion." (Compl. at 5.)  This threadbare recital of the elements of a free exercise claim are insufficient under *Iqbal.*  556 U.S. at 678.  Plaintiff does not identify what his religion or religious beliefs are, foreclosing any meaningful inquiry into whether his beliefs are religious in nature or sincerely held.  Likewise, because Plaintiff does not identify what religious materials were confiscated from him, the court cannot determine whether Plaintiff's religious beliefs were substantially burdened, or whether the confiscation imposed a mere inconvenience to the practice of his religious beliefs.  Accordingly, the court finds that Plaintiff fails to state a claim for violation of his free exercise rights.

### 3.      Access to the Courts

Prison inmates have a constitutional right to meaningful access to the courts.  *Bounds v. Smith,* 430 U.S. 817, 822-23 (1977).  This right prohibits prison officials from "affirmatively hinder[ing] a prisoner's effort to construct a nonfrivolous appeal or claim." *Green v. Johnson,* 977 F.2d 1383, 1389 (10th Cir. 1992).  "Any deliberate impediment to access [to the courts], even a delay of access, may constitute a constitutional deprivation." *Id.* (quotation marks and citation omitted).

24

However, to state a right of access to the courts claim, "a prisoner must demonstrate actual injury from interference with his access to the court—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or conditions of confinement." *Gee v. Pacheco,* 627 F.3d 1178, 1991 (10th Cir. 2010) (citing *Lewis v. Casey,* 518 U.S. 343, 351-55 (1996)). "Conclusory allegations of injury in this respect will not suffice." *Wardell v. Duncan,* 470 F.3d 954, 959 (10th Cir. 2006) (citing *Cosco v. Uphoff,* 195 F.3d 1221, 1224 (10th Cir. 1999)); *cf. Simkins v. Bruce,* 406 F.3d 1239, 1243 (10th Cir. 1999) (recognizing a sufficient showing of actual injury where prisoner demonstrated specific impact on prosecution of a particular case); *Boles v. Newth,* 479 F. App'x 836, 841 (10th Cir. 2012) (prisoner must allege "actual prejudice to a specific case"). Speculation as to what may occur in the future does not satisfy the actual injury requirement of *Lewis.* *Gilbert-Mitchell v. Allred,* No. 12-cv-01997-BNB, 2013 WL 229996, at *2 (D. Colo. Jan. 22, 2013).

The court finds that Plaintiff's allegations fail to satisfy the actual injury requirement. Plaintiff alleges that the confiscation of prior motions filed in his criminal case rendered him unable "to effectively litigate his post conviction proceeding" is plainly conclusory. *See also Lewis*, 518 U.S. at 354 (disclaiming statements in *Bounds* suggesting that states must enable the prisoner to "*litigate effectively*" once in court) (emphasis in original). Plaintiff does not allege that the confiscation of his legal materials prevented Plaintiff from filing a pleading in his post-conviction proceedings, caused him to miss a court-imposed deadline, or caused his post-conviction case to be dismissed. Ultimately, Plaintiff's allegations do not establish that the

confiscation of his legal materials, including the motions filed in his criminal case, have caused any *actual* prejudice or injury to his pursuit of post-conviction relief.  Accordingly, the court finds that Plaintiff fails to state a claim that he was denied his First Amendment right of access to the courts.

**E.**    ***Qualified Immunity***

As a final matter, the court notes that Defendant Beneze has raised the defense of qualified immunity.  The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would not have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See also Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.")  To defeat the defense of qualified immunity, the plaintiff first must establish that his allegations, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right.  *Saucier*, 533 U.S. at 201.  If the plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id*.

Here, as outlined above, Plaintiff fails to sufficiently allege that Defendant violated his constitutional rights.  Accordingly, Defendant is entitled to qualified immunity from the claims alleged in Plaintiff's Complaint.[9]

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Defendant's Motion to Dismiss be GRANTED.  I further

RECOMMEND that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

---

[9] Because the court finds that Plaintiff's Complaint fails to state a claim for relief and that Defendant is entitled to qualified immunity, the court does not address Defendant Beneze's additional arguments that Plaintiff is not entitled to compensatory or punitive damages and that Plaintiff's requests for damages and equitable relief are barred by *Heck v. Humphrey,* 512 U.S. 477 (1997).  (*See* Mot. Dismiss at 7, 14-15.)

general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

      Dated this 24th day of June, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge